UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

James Bartshe,

     Plaintiff,

     v.                      Civil Action No. 2:18-cv-166-cr-jmc

Commissioner of the Vermont
Department of Corrections et al.,

     Defendants.

## REPORT AND RECOMMENDATION
(Doc. 25)

Plaintiff James Bartshe, a deaf inmate in the custody of the Vermont

Department of Corrections (DOC), brings this action alleging that the DOC has

failed to provide him with reasonable accommodations for his hearing disability in

violation of the Americans with Disabilities Act (ADA). (Doc. 5.) He also alleges

that, as a result of his filing of grievances and requests for accommodations relating

to his hearing disability, he has been subjected to harassment, discrimination, and

retaliation. (*Id.*) Bartshe seeks injunctive relief in the form of various

accommodations and an order prohibiting DOC staff from retaliating against him.

(*Id.* at 6.) He names as Defendants the DOC; Lisa Menard, the former DOC

Commissioner[1]; Marble Valley Regional Correctional Facility (MVRCF); and 12

other persons employed by or otherwise affiliated with the DOC.

---

[1] Since the filing of this suit, both Defendant Lisa Menard and her successor, Michael Touchette, have stepped down as Commissioner of the DOC. As Touchette's successor has not yet been appointed, under Federal Rule of Civil Procedure 25(d), the Commissioner of the Vermont DOC is automatically substituted as Defendant in this case.

Presently before the court is Defendant Menard's Motion for Summary Judgment.  (Doc. 25.)  For the reasons stated below, I recommend that the Motion be GRANTED in part and DENIED in part.  I further recommend that the claims against the remaining Defendants be dismissed without prejudice pursuant to Federal Rule of Civil Procedure 4(m) for failure to effect service.

## Background

Bartshe, proceeding *pro se*, commenced this action in Vermont's Washington County Superior Court on August 13, 2018.  (Doc. 5.)  About a month later, counsel from the Vermont Prisoners' Rights Office entered a Notice of Appearance on Bartshe's behalf.  (Doc. 9; *see also* Doc. 24.)  On October 12, 2018, the case was removed to federal court pursuant to 28 U.S.C. § 1441.  (Doc. 1.)

In his Complaint, Bartshe alleges that the DOC has discriminated against him in violation of the ADA by denying him reasonable accommodations for his hearing disability.  (Doc. 5.)  He further alleges that he "has been harassed, ridiculed, made the object of undue attention, discriminated against[,] and been the subject of retaliation and withholding of services," in response to his grievances or requests for accommodations related to his hearing disability.  (*Id.* at 2, ¶ 8.)  Bartshe claims that the DOC has failed to provide "reasonable ADA accommodations" in the following areas: (1) ASL interpretation; (2) "[r]eal-[t]ime communication"; (3) person-to-person interaction; (4) subtitles and assistive listening devices; and (5) access to a litany of services in the areas of mental health, facility activities, announcements, audiology, and alerting protocols.  (*Id.* at 4, ¶ 19.)

These categories are reorganized in Bartshe's Opposition to Defendant's Motion for Summary Judgment as follows: (1) telecommunications; (2) ASL interpretation; (3) captioning and media; and (4) alerting protocols.[2]  (Doc. 30 at 3.)

In the pending Motion for Summary Judgment, Defendant argues that the DOC has provided Bartshe with reasonable accommodations in each challenged category, allowing him to participate in and benefit from the DOC's programs and activities.  (Doc. 25.)  Bartshe, through counsel, has filed an Opposition to the Motion (Doc. 30); and Defendant has filed a Reply (Doc. 31).  Oral argument on the Motion was held via telephone on May 27, 2020.

Only Defendant Menard, in her official capacity, has been properly served with this suit.  (Doc. 10.)  Therefore, on December 17, 2019, this court issued an Order notifying Bartshe that his claims against the unserved Defendants were "subject to dismissal without prejudice for insufficient and untimely service of process."  (Doc. 32 at 2.)  To date, it still appears that no Defendants other than Menard have been served with process.

## Analysis

## I.    Motion for Summary Judgment

### A.    Summary Judgment Standard

A motion for summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[2] Originally, Bartshe also asserted that Defendant has not provided him with adequate access to audiological care.  (Doc. 30 at 3.)  However, at oral argument, his counsel informed the court that Bartshe is satisfied with his audiological care and counsel withdrew this aspect of his ADA claim.

judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine dispute as to any material fact" exists when factual issues materially affecting the outcome could reasonably be resolved in favor of either party. *See McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). At the summary judgment stage, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them"; the court's duty "is confined . . . to issue-finding . . . [and] does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party bears the burden of showing that no genuine factual disputes exist. *See Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010). If the moving party meets its burden, the non-moving party must set forth "specific facts showing that there is a genuine issue of material fact to be tried," and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the [nonmoving] party's pleading." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993) (alteration in original) (citations and internal quotation marks omitted) (citing Fed. R. Civ. P. 56(e), (f)). Summary judgment is also proper where the moving party can "point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

In determining whether summary judgment is appropriate, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[ ] all reasonable inferences in [his] favor." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 108 (2d Cir. 2013). "If . . . there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 37 (2d Cir. 1994); *see also Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315–16 (2d Cir. 2006).

## B.    Americans with Disabilities Act (ADA) Claim

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a prima facie violation under the ADA, the plaintiff must show that: (1) he is a qualified individual with a disability; (2) the defendant is subject to the ADA; and (3) the plaintiff was "denied the opportunity to participate in or benefit from" the defendant's services, programs, or activities; or was "otherwise discriminated against" by the defendant due to the plaintiff's disability. *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003). Here, the parties do not dispute that Bartshe is a qualified individual with a disability or that the DOC is subject to the ADA. Thus, the only issue is whether the DOC denied Bartshe the opportunity to

participate in or benefit from the DOC's services, programs, and activities; or otherwise discriminated against Bartshe by failing to provide him with reasonable accommodations. (*See* Docs. 25, 30.)

As a general matter, Title II's implementing regulations provide that "[a] public entity shall take appropriate steps to ensure that communications with . . . participants . . . with disabilities are as effective as communications with others," 28 C.F.R. § 35.160(a)(1), and "shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities . . . an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity," *id.* § 35.160(b)(1). "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability." *Id.* § 35.160(b)(2). Finally, if a public entity chooses to provide video remote interpreting (VRI) services, it must provide "[a]dequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." *Id.* § 35.160(d)(4).

In order to assure meaningful access to a subject entity's programs or benefits, "reasonable accommodations . . . may have to be made." *Alexander v. Choate*, 469 U.S. 287, 301 (1985); *see* 28 C.F.R. § 35.130(b)(7). The plaintiff "bears the initial burdens of both production and persuasion as to the existence of an accommodation" that is "facial[ly] reasonable[ ]." *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.*, 804 F.3d 178, 190 (2d Cir. 2015). While a reasonable

accommodation need not be "perfect or the one most strongly preferred" by the plaintiff, *id.* at 189 (internal quotation marks omitted), it "must provide effective access to prison activities and programs," *Wright v. N.Y. State Dep't of Corr.*, 831 F.3d 64, 73 (2d Cir. 2016).  As the Second Circuit has observed, determining the reasonableness of an accommodation is a "fact-specific question that often must be resolved by a factfinder."  *Noll v. Int'l Bus. Machs. Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (internal quotation marks omitted); *see also Staron v. McDonald's Corp.*, 51 F.3d 353, 356 (2d Cir. 1995).

As noted earlier, Bartshe alleges inadequate accommodations in four general categories, each of which is addressed below: (1) telecommunications; (2) ASL interpretation; (3) captioning and media; and (4) alerting protocols.  (Doc. 30 at 2–3.)

### 1.    Telecommunications

Bartshe contends that the DOC has denied him reasonable accommodations with regard to telecommunication capabilities in several ways.  First, he states that, "[u]ntil recently," the only accessible telecommunications technology available to him was TTY[3] because the DOC's Cap Tel telephone[4] "did not work" when he tried to use it.  (Doc. 30-2 at 2, ¶¶ 7, 8.)  Defendant maintains, however, that Bartshe has

---

[3]  A "TTY" telephone is a teletypewriting device that allows a hearing-impaired individual to communicate over the telephone by sending and receiving typed messages, rather than speaking. (*See* Doc. 25-2 at 4, ¶ 11.)

[4]  A "Cap Tel" telephone is a captioned telephone that allows a hearing-impaired individual and a hearing individual to communicate over the telephone through a captioning relay service, which transcribes the speech and displays a text caption on the screen of the hearing-impaired individual's device.  (*See* Doc. 25-2 at 3–4, ¶ 10.)

access to both, but has rejected use of the Cap Tel telephone, stating that he "prefers using the TTY [tele]phone."  (Doc. 25-5 at 2, ¶ 5.)  Moreover, Defendant states that the TTY telephone is available to Bartshe at any time except when he is secured in his cell for headcounts, overnight, or during facility emergencies.  (*Id.* at 3, ¶ 6.)  Bartshe counters that the TTY telephone, located in his caseworker's office, is "only available at limited times."  (Doc. 30-2 at 2, ¶ 7.)

Second, Defendant asserts that inmates have been issued tablets,[5] which contain a "messaging feature like the telephone texting of TTY and Cap Tel telephones," such that all inmates can communicate via email through the tablet.  (Doc. 25-2 at 4, ¶ 12.)  Bartshe states that hearing inmates are also able to make phone calls on their tablets from inside their cells, even during lockdowns, whereas there is no comparable application for hearing-impaired inmates who use ASL to make phone calls from within their cells.  (Doc. 30-2 at 3, ¶ 13.)

Defendant nevertheless argues that the DOC has provided reasonable accommodations because it has installed *Purple*, an application that provides both video relay service (VRS) and video remote interpreting (VRI), on a kiosk tablet located in the day room of Bartshe's living area.  (Doc. 25-4 at 2, ¶ 4; Doc. 25-5 at 3, ¶ 13.)  *Purple*'s VRS function permits video visitation and telephone communication between an ASL user and a non-ASL user in different locations.  (Doc. 25-5 at 3, ¶ 13; Doc. 30-2 at 3, ¶¶ 10, 15.)  All video visitors must be approved by the DOC and

---

[5] According to the Merriam-Webster Online Dictionary, a "tablet" is "a mobile computing device that . . . is usually controlled by means of a touch screen, and that is typically used for accessing the Internet, watching videos, playing games, [and] reading electronic books." *https://www.merriam-webster.com/dictionary/tablet* (last visited February 19, 2020).

all hearing and hearing-impaired inmates in Bartshe's living unit have equal access to the kiosk. (Doc. 25-5 at 3, ¶ 13.) Bartshe acknowledges that the DOC installed *Purple* in June 2019; however, he attests that it has "not work[ed] consistently," and that there have been "occasional technological issues" with the VRS function. (Doc. 30-2 at 2–3, ¶¶ 9, 11–12.) By contrast, Defendant contends that the installers of the kiosk tablet reported that the functionality and picture quality of *Purple*'s connection on the tablet was "excellent." (Doc. 25-4 at 2, ¶ 5.)

Viewing the record in the light most favorable to Bartshe, there remain genuine disputes of material facts that preclude summary judgment on this claim. As an initial matter, the evidence offered by Bartshe and Defendant, respectively, present contrasting material facts regarding: the accessibility of the TTY telephone, the reason Bartshe has not used the Cap Tel telephone, and the effectiveness of *Purple*'s VRS function. Such disputes are inappropriate for the court to weigh on a motion for summary judgment; rather, they are questions of fact to be determined at trial. *See Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (internal quotation marks omitted)); *see also Gallo*, 22 F.3d at 1224 (stating that the court's task "is confined at this point to issue-finding; it does not extend to issue-resolution").

Moreover, it is not clear based on the record whether the DOC's accommodations are "plainly reasonable," *Wright*, 831 F.3d at 73 (internal quotation

marks omitted), such that Bartshe has been provided "meaningful access to the benefit" offered, *Alexander*, 469 U.S. at 301.  The DOC is required to "ensure that communications with . . . participants . . . with disabilities are *as effective* as communications with others."  28 C.F.R. § 35.160(a)(1) (emphasis added).  As noted, Bartshe contends that he had limited access to the TTY telephone; the Cap Tel telephone did not work when he tried to use it; and *Purple*'s VRS function has only worked inconsistently since its installation on the kiosk tablets.  (Doc. 30-2 at 2–3, ¶¶ 7–8, 11–12.)  Considering the evidence in the light most favorable to Bartshe, there are material issues of disputed fact regarding whether Bartshe's ability to communicate with others was as effective as that of hearing inmates.

In addition, 28 C.F.R. § 35.160(b)(2) requires auxiliary aids and services to be provided "in such a way as to protect the *privacy* and independence of the individual with a disability" (emphasis added).  Bartshe attests that, while hearing inmates are able to place calls from their tablets *within their cells*, hearing-impaired inmates have no analogous capability.  (Doc. 30-2 at 3, ¶ 13.)  Defendant counters that hearing-impaired inmates may use VRS on the kiosk tablet to make video calls but acknowledges that this tablet is located "in the day room of each living unit" rather than in each hearing-impaired inmate's cell.  (Doc. 25-5 at 3, ¶ 13.)  These alleged facts permit the reasonable inference that the DOC's kiosk VRS accommodation is at odds with the regulatory obligation to provide auxiliary aids that protect the privacy of hearing-impaired inmates.

I thus find that there are genuine disputes of material fact as to whether the DOC's accommodations for hearing-impaired inmates reasonably provided Bartshe with meaningful access to effective communication. Accordingly, I recommend that summary judgment on this claim be DENIED.

### 2.    ASL Interpretation

Defendant next argues that the DOC has made reasonable accommodations with regard to ASL interpretation services because it provides in-person ASL interpreters for hearing-impaired inmates who use ASL for "important programs or events that can be scheduled in advance." (Doc. 25-2 at 2, ¶ 4.) Furthermore, Defendant contends that *Purple* also provides VRI services, which uses a video interpreter as an English-ASL intermediary, allowing a hearing-impaired inmate who uses ASL to communicate with a hearing person located in the same location as the inmate. (*Id.* at 3, ¶¶ 5–6.) Defendant maintains that *Purple* is installed on DOC computers and laptops, has strong connectivity as well as sound and image quality, and is available at all times through a common account and password. (*Id.* at 2–3, ¶¶ 3–6.) Defendant claims that DOC staff are required to use *Purple* for all "critical communications" with hearing-impaired inmates, including those related to the grievance process, and is available to provide hearing-impaired inmates access to religious ceremonies and to facilitate visitation, medical and mental health appointments, risk intervention services, and education. (*Id.* at 3, ¶ 7.) Defendant states that training materials about how to use *Purple* have been provided to all DOC ADA Coordinators at all DOC facilities. (*Id.* ¶ 8.)

Bartshe, on the other hand, contends that in-person ASL interpreters have been provided to him on only two occasions, both related to legal proceedings, over the course of his four years in DOC custody. (Doc. 30-2 at 5, ¶ 27.) He argues that in-person ASL interpreters have never been provided for DOC "programs or events." (*Id.*) Bartshe attests that he was not informed of the availability of *Purple*'s VRI services until his attorney showed him Defendant's Motion for Summary Judgment (*id.* at 3, ¶ 16), and that the technology "has not consistently been made available to [him] for interactions with DOC [employees], medical [staff], and mental health staff" (*id.* ¶ 17). He specifically claims that *Purple* was offered to him neither at a medical appointment occurring on or about September 13, 2019, nor at a psychiatric appointment occurring on or about October 4, 2019. (*Id.* ¶¶ 18–19.) In response, Defendant states that "*Purple* was not available on the mental health computer until the week of October 7, 2019." (Doc. 31 at 5.)

Moreover, Bartshe asserts that, although he was able to successfully use *Purple* VRI during a mental health appointment on October 14, 2019, he had to ask three different DOC staff members before he was able to locate one who knew what the service was and how to access it. (Doc. 30-2 at 4, ¶ 20.) He identifies several other instances where he requested to use *Purple* VRI, but staff members did not know what the service was and questioned whether it was necessary. (*Id.* ¶¶ 22–23, 25.) Bartshe also states that he was not provided *Purple* VRI services on October 15, 2019, when he was approached by a DOC staff member about a grievance he had filed, nor has he ever been provided VRI services during religious services

12

despite multiple requests. (*Id.* ¶¶ 21–22.) Finally, Bartshe admits that he used *Purple* successfully during his "annual physical appointment in November" (*id.* ¶ 26) but avers that it was unavailable to him at a medical appointment occurring on or about October 31, 2019 "due to technological issues" (*id.* ¶ 24).

Summary judgment on Bartshe's claims regarding ASL interpretation should be denied. First, Defendant contends that it provided training materials about how to use *Purple* VRI to all "DOC ADA Coordinators at all of the DOC facilities." (Doc. 25-2 at 3, ¶ 8.) As noted above, however, Bartshe claims that on several occasions he asked DOC staff members to use *Purple* VRI for appointments or meetings, but the staff members did not know what it was or how to access it. (Doc. 30-2 at 4, ¶¶ 20, 22–23, 25.) Under 28 C.F.R. § 35.160(d)(4), a public entity that chooses to provide VRI services must provide "*[a]dequate* training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI" (emphasis added). Given Bartshe's claims, there remains a genuine dispute of material fact regarding whether the training provided by the DOC to ADA Facility Coordinators about how to use *Purple* VRI was "adequate."

Bartshe also claims that ASL interpretation—either in-person or via *Purple*—has not been made consistently available to him, despite the DOC's stated policies. (*Compare* Doc. 25-2 at 2, ¶ 4 *with* Doc. 30-2 at 5, ¶ 27 (in-person ASL interpretation for DOC programs and events); Doc. 25-2 at 2–3, ¶¶ 3–6 *with* Doc. 30-2 at 4, ¶ 24 (functionality of *Purple* VRI); Doc. 25-2 at 3, ¶ 7 *with* Doc. 30-2 at 4, ¶ 21 (staff use of *Purple* for "critical communications," including grievances); Doc.

25-2 at 3, ¶ 7 *and* Doc. 31 at 5 *with* Doc. 30-2 at 3, ¶¶ 17–19 (*Purple* availability for medical and mental health appointments).)  Defendant apparently concedes that some of the positive steps the DOC has taken to accommodate Bartshe's needs with regard to ASL interpretation have been taken post-litigation, and even contemporaneously with or post-filing of its pending Motion for Summary Judgment.  (*See, e.g.*, Doc. 31 at 5.)  Given the conflicting evidence about whether the DOC has made available "appropriate auxiliary aids and services," 28 C.F.R. § 35.160(b)(1), summary judgment on this issue should be denied.  *Cf. McBride v. Mich. Dep't of Corr.*, 294 F. Supp. 3d 695, 713–16 (E.D. Mich. 2018) (on cross-motions for summary judgment, granting plaintiffs' motion and denying defendant's motion on similar facts); *see also Holmes v. Godinez*, 311 F.R.D. 177, 228 (N.D. Ill. 2015) ("Although it appears that [the DOC] has made some strides . . . , the record presented . . . is far too muddled and incomplete to determine the extent of those efforts and whether they are sufficient.").

In sum, whether or not the evidence establishes that the DOC's accommodations were sufficiently "reasonable" for purposes of the ADA is a matter for the jury to resolve at trial.  Resolving all ambiguities and drawing all reasonable inferences in Bartshe's favor, a reasonable juror could infer from the evidence that the DOC did not adequately train staff members to use *Purple*'s VRI services, did not consistently provide in-person or *Purple* ASL interpretation for important programs or appointments, and otherwise failed to afford Bartshe "an equal opportunity to participate in, and enjoy the benefits of, [the DOC's] service[s],

14

program[s], or activit[ies]." 28 C.F.R. § 35.160(b)(1). Summary judgment on this claim should therefore be DENIED.

### 3. Captioning and Media

Bartshe also claims that the DOC has not reasonably accommodated him in the areas of captioning and media. Defendant and Bartshe agree that there is closed captioning on all televisions at the MVRCF, and that Bartshe has been given headphones that are designed to fit over his hearing aids to help block out external noise so he can use his tablet for listening to music and videos. (Doc. 25-2 at 4, ¶ 12; Doc. 25-5 at 3–4, ¶¶ 14, 18; Doc. 30-2 at 6, ¶¶ 37–38.) But Bartshe claims there is no closed captioning on his tablet (Doc. 30-2 at 6, ¶ 39), and this constitutes a failure to reasonably accommodate his disability.

Absent facts to support an inference that the headphones are insufficient to reasonably accommodate his needs, the record on summary judgment establishes that the DOC has provided Bartshe with "an equal opportunity to . . . enjoy the benefits of" the audio functions of tablets issued to inmates. 28 C.F.R. § 35.160(b)(1). *See* 28 C.F.R. Pt. 35, App. A (stating that a public entity should honor the disabled individual's choice of auxiliary aid "unless it can demonstrate that another effective means of communication exists"); *see also Wilson v. Virginia Dep't of Corr.*, 1:17cv1487 (LO/MSN), 2019 WL 1186845, at *3 (E.D. Va. Mar. 13, 2019) (granting defendants' summary judgment motion where plaintiff had alternate effective means of enjoying the media benefit); *cf. Garcia v. Taylor*, No. 4:07-cv-474-SPM/WCS, 2009 WL 2496521, *10–12 (N.D. Fla. Aug. 11, 2009) (denying

defendants' summary judgment motion where plaintiff provided facts indicating closed captioning was not a reasonable accommodation "in light of his apparent literacy difficulties, the lack of closed captioning with some programs, and the fact that not all televisions have closed captioning").

Bartshe further asserts that "[t]he commissary ordering system is only available through [a] voice-operated telephone," such that he "ha[s] to ask for help any time [he] want[s] to order commissary." (Doc. 30-2 at 6, ¶ 40.) But Bartshe offers no facts showing that this system denies him effective, meaningful access to ordering commissary, and in fact, nothing in the record suggests that he has been denied the benefits of the commissary system due to his disability. *See, e.g.*, *Cole v. Goord*, No. 05 Civ. 2902(GEL), 2009 WL 2601369, at *9 (S.D.N.Y. Aug. 25, 2009) (finding that plaintiff was not excluded from commissary benefits where he asserted "not that he was unable to use the commissary," but rather, that the prison should have provided specific accommodations to make his use easier). Accordingly, I recommend that summary judgment be GRANTED with regard to Bartshe's claims concerning captioning and media.

### 4.    Alerting Protocols

Defendant also moves for summary judgment on Bartshe's allegations regarding notification procedures, including alerting protocols, at MVRCF. Defendant submits that, because Bartshe is unable to fully hear announcements made on the PA announcement system used to notify hearing inmates of activities, he "is notified in writing, face to face, verbally[,] or through non-verbal prompts and

gestures[,] of activities such as headcounts, meals, volunteer activities, lawyer calls, education programs, recreation times/activities, open library, law library time, medical call and medication delivery[,] and other events." (Doc. 25 at 6; *see* Doc. 25-5 at 3, ¶ 15.) Defendant explains that when notifications are given to Bartshe, they are recorded on an "ADA Notification Form" (Doc. 25-7). (Doc. 25-5 at 4, ¶ 16.) This procedure is monitored by either the Security and Operations Supervisor or the Living Unit Supervisor by comparing the notations on the ADA Notification Form with other facility logs that document announced activities in order to ensure that Bartshe was properly notified of all announcements. (*Id.*)

Defendant further states that Bartshe's living unit is outfitted with a "flash alarm system," which is engaged in emergency situations such as fires. (*Id.* ¶ 17.) When activated, the flashing light is visible from the unit's common area and from within Bartshe's cell. (*Id.*) In addition to the flash alarm system, MVRCF protocol requires security staff to go to each cell to verify that all inmates are aware of an emergency and evacuated if necessary. (*Id.*)

Despite the DOC's stated protocol, Bartshe contends that DOC staff "still do not properly alert [him] of facility activities." (Doc. 30-2 at 5, ¶ 28.) He attests that he does not always wear his hearing aids in his cell and thus cannot always hear verbal notifications. (*Id.* ¶ 29.) For example, on or about October 21, 2019, Bartshe states that he was not awakened for work; when he asked about the incident, he was told that staff verbally notified him several times but did not attempt to notify him through other means such as "tapp[ing] [him]." (*Id.* ¶ 30.) Bartshe avers that

17

he has missed out on recreational activities as well due to DOC staff's failure to notify him of opportunities to join.  (*Id.* ¶¶ 31–32.)

Considering this evidence, I find that material disputes of fact exist with regard to whether the DOC provides adequate accommodations so that Bartshe can effectively participate in and benefit from the DOC's programs and activities. Although the DOC's alternative notification procedure permits staff to inform Bartshe of announcements verbally in person, this may not be sufficient to reasonably accommodate Bartshe's hearing impairment, particularly when Bartshe is not wearing his hearing aids while inside his cell.

Defendant argues that Bartshe has not established that "waking to go to work and signing up for gym" are the responsibility of the DOC rather than Bartshe's "own responsibility."  (Doc. 31 at 5.)  But this argument misses the point: the ADA's implementing regulations require the DOC to ensure that communications with disabled inmates are "as effective as communications with others,"  28 C.F.R. § 35.160(a)(1), and must afford them "an equal opportunity to participate in, and enjoy the benefits of, [its] service[s], program[s], or activit[ies],"  *id.* § 35.160(b)(1).  Thus, the DOC must ensure that it communicates information about work and recreational opportunities to Bartshe as effectively as it communicates that information to its hearing inmates.  Defendant further argues that Bartshe has failed to establish that "waking for work or signing up for gym are audio announcements made in his living area for which [the DOC] has made accommodations."  (Doc. 31 at 5.)  The DOC's own evidence, however, shows that its

alternative notification procedure includes announcements regarding "volunteer activities, lawyer calls, education, recreation[al] activities, [and visits to the] law library," among others.  (Doc 25-5 at 3, ¶ 15.)  And a juror could conclude that announcements about work programs would reasonably be included in this list.

Drawing all reasonable inferences in Bartshe's favor, I find that there remains a question of material fact as to whether the DOC's alternative notification procedure, as utilized by the DOC, satisfies the ADA's requirements.  In any case, the arguments and evidence presented are insufficient to conclude that the DOC's accommodations effectively provide Bartshe an equal opportunity to participate in its programs and activities.  Summary judgment on this issue should therefore be DENIED.

Summary judgment should be GRANTED, on the other hand, on Bartshe's claims regarding the DOC's flashing light emergency alert system.  Bartshe's only claim regarding the deficiencies of this system is that, although the emergency flashing light is visible from inside his cell, he "*may* not notice [it]" if he is "facing the wall when [he is] sleeping."  (Doc. 30-2 at 5, ¶ 33 (emphasis added).)  This claim is speculative and equivocal, and thus does not meet Plaintiff's burden on summary judgment.  *See Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) ("Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." (omission in original) (internal quotation marks omitted).)

### C.    Retaliation Claim

Bartshe's Complaint also appears to assert a retaliation claim under either the First Amendment or the ADA.  (*See* Doc. 5 at 2, ¶ 8.)  But Defendant contends that the claim fails under either law because Bartshe has not alleged any facts regarding how or when the DOC retaliated against him.  (Doc 25 at 9–11.)  Bartshe wholly fails to counter this argument in his Opposition to Defendant's Motion for Summary Judgment.  (*See generally* Doc. 30.)  "Federal courts have the discretion to deem a claim abandoned 'when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.'"  *Bain v. Hofmann*, Civil Action No. 1:06–CV–222, 2010 WL 3927329, at \*9 (D. Vt. Aug. 26, 2010) (quoting *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)); *see also Jackson v. Fed. Express*, 766 F.3d 189, 197–98 (2d Cir. 2014) ("Where a partial response to a motion [for summary judgment] is made . . . [by] a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").  Moreover, at oral argument on the Motion for Summary Judgment, Bartshe's counsel informed the court that he was abandoning the retaliation claim. Accordingly, Bartshe's retaliation claim is deemed abandoned and the court need not consider it.

## II.    Failure to Effect Service

Rule 4(m) of the Federal Rules of Civil Procedure requires dismissal without prejudice, after notice to the plaintiff, if service of the complaint and summons is

not made within 90 days after those documents are filed. *See, e.g.*, *Forcier v. Vermont Dep't of Corr.*, Civil Action No. 2:16-cv-268-cr-jmc, 2018 WL 5724086, at *1 (D. Vt. July 25, 2018), *report and recommendation adopted*, 2018 WL 5722249 (D. Vt. Nov. 1, 2018) (dismissing without prejudice for lack of service and failure to prosecute).

As noted above, this action was originally filed in state court on August 13, 2018 (Doc. 5) and was removed to federal court on October 12, 2018 (Doc. 1). According to records received from the state court, only Defendant Menard, in her official capacity, has been served with process in this case. (Doc. 10.) Therefore, on December 17, 2019, this court issued an Order notifying Bartshe that, "as to the[] unserved [D]efendants, the [C]omplaint is subject to dismissal without prejudice for insufficient and untimely service of process." (Doc. 32 at 2.) To date, there is no indication on the docket that Bartshe has served the remaining Defendants or sought waivers of service. Accordingly, I recommend the claims against such Defendants (including Defendant Menard in her individual capacity) be dismissed without prejudice pursuant to Rule 4(m).

## <u>Conclusion</u>

For these reasons, I recommend that Defendant Menard's Motion for Summary Judgment (Doc. 25) be GRANTED in part and DENIED in part, as follows:

1.    DENIED as to Bartshe's claims regarding telecommunications, ASL interpretation, and the DOC's alternative notification procedure; and

2.      GRANTED as to Bartshe's claims regarding captioning and media as
        well as the DOC's emergency flashing light system.

No decision is required on Bartshe's claims regarding access to audiology or
retaliation, as those claims have been withdrawn.  I further recommend that the
claims against the remaining Defendants be dismissed without prejudice for
insufficient and untimely service of process.

Dated at Burlington, in the District of Vermont, this 17th day of July 2020.


/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within 14 days
after service thereof, by filing with the Clerk of the Court and serving on the
Magistrate Judge and all parties, written objections which shall specifically identify
those portions of the Report and Recommendation to which objection is made and
the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),
72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of
any further judicial review of the magistrate's decision." *Small v. Sec'y of Health
and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).